FILED IN CHAMBERS
U.S.D.C. Atlanta

ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

JUN 2 2 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES OF AMERICA          :
                                  :          CRIMINAL INDICTMENT
              v.                  :
                                  :          NO. 1:11-CR-121-SCJ-LTW
MARK A. CONNER,                   :          (FIRST SUPERSEDING)
CLAYTON A. COE, and               :
ROBERT E. MALONEY, JR.            :

THE GRAND JURY CHARGES THAT:

## COUNT ONE
### (Conspiracy to Commit Bank Fraud)
### 18 U.S.C. § 1349

1.   Beginning in or about 2004, the exact date being unknown
to the Grand Jury, and continuing thereafter until on or about
March 21, 2009, in the Northern District of Georgia and elsewhere,
the defendants,

MARK A. CONNER,
CLAYTON A. COE, and
ROBERT E. MALONEY, JR.

did willfully and knowingly combine, conspire, confederate, agree
and have a tacit understanding with each other and with others
known and unknown to the Grand Jury, to commit bank fraud, an
offense against the United States, that is to knowingly devise and
execute and attempt to execute a scheme and artifice (i) to defraud
a financial institution and (ii) to obtain moneys, funds, and
assets owned by and under the custody and control of a financial
institution by means of materially false and fraudulent pretenses,

representations, and promises, in violation of Title 18, United States Code, Section 1344.

BACKGROUND

2.   At all times relevant to this Indictment:

a.   FirstCity Bank of Stockbridge, Georgia, ("FirstCity Bank") was a financial institution headquartered in Henry County, Georgia, whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").   On or about March 20, 2009 FirstCity Bank failed and was taken over by the FDIC as receiver.

b.   Defendant MARK A. CONNER was Vice Chairman of the Board of Directors, a member of the loan committee, and a significant shareholder of FirstCity Bank.  In or about April 2006, defendant MARK A. CONNER also became FirstCity Bank's President and Chief Operating Officer.  From in or about September 2008 until its failure in March 2009, defendant MARK A. CONNER served as FirstCity Bank's acting Chief Executive Officer and Chairman of the Board of Directors.

c.   Defendant CLAYTON A. COE was a Vice President and the Senior Commercial Loan Officer of FirstCity Bank.   As the Senior Commercial Loan Officer, defendant CLAYTON A. COE was the loan officer responsible for originating and recommending the approval of the vast majority of FirstCity Bank's commercial and real estate loans.  Defendant CLAYTON A. COE also was involved in transferring, or "participating," certain FirstCity Bank-originated

2

loans to other banks, in whole or part.   Defendant CLAYTON A. COE attended meetings of FirstCity Bank's loan committee, and, in or about January 2007, became a member of that committee.

d.   Defendant ROBERT E. MALONEY, an attorney, performed legal work for defendant MARK A. CONNER and corporate entities in which defendant MARK A. CONNER, UNINDICTED CO-CONSPIRATOR NUMBER 1, and others had ownership interests.   In or about January 2006, defendant MARK A. CONNER hired and caused FirstCity Bank to hire defendant ROBERT E. MALONEY as an employee of FirstCity Bank, to work as FirstCity Bank's corporate or inside counsel. As FirstCity Bank's counsel, defendant ROBERT E. MALONEY's job duties included handling legal matters involving FirstCity Bank; reviewing loan files and documentation, including  credit memoranda and title commitments, relating to loans made by FCB; and the preparation of corporate documentation for borrowers obtaining loans from FCB, including the formation of new corporate entities for borrowers.

e.   FirstCity Bank offered personal and business banking services, including loaning money in exchange for interest and fees.   This generally included loans to consumers, residential mortgage loans, and commercial loans.  FirstCity Bank's commercial lending activities included multi-million dollar commercial real estate transactions, including loans made to enable borrowers to acquire large tracts of land, develop land into sub-divisions, construct residential homes, and to refinance existing debt.

3

f.    Loans made to borrowers to acquire and develop raw
land, or to construct residential homes, were generally referred to
as acquisition, development, and construction ("ADC") loans.  ADC
loans were often only partially disbursed at or in connection with
a real estate closing to fund, along with the borrower's down
payment, the land purchase.   The remainder of the ADC loan was
disbursed as the borrower incurred and sought funds (referred to as
"draws") from the loan to pay for development costs.   FirstCity
Bank sometimes used part of a loan to establish an account for the
borrower referred to as an "interest reserve."   The funds in the
interest reserve were supposed to be used by FirstCity Bank to
cover the borrower's monthly interest costs for a specified period
of time.

g.    FirstCity Bank's loan committee was primarily
responsible for reviewing and approving loans made by the bank,
including all of the loans relevant to this Indictment.    In
reviewing and approving a loan, the bank's loan committee relied
primarily on the bank executive or loan officer recommending
approval of the loan and a credit approval memorandum ("credit
memorandum") prepared and caused to be prepared by such individual.
The credit memorandum summarized the material terms of the proposed
loan, including the amount and the purpose of the loan; the
identity, creditworthiness, and background of the borrower; and
other important factors relevant to FirstCity Bank's exposure or

risk, such as whether or to what extent the borrower would be required to make a down payment or otherwise invest in the land or project.

h.   FirstCity Bank transferred, or "participated," some of its loans, in whole or part, to other federally insured banks in Georgia and Florida.  A bank that decided to participate in a loan that FirstCity Bank originated would fund some or all of the principal amount of the loan around the time of the closing or sometime thereafter.  In general, other banks participated in FirstCity Bank's loans to diversify or grow their own loan portfolio.  The banks that participated in FirstCity Bank's loans included the following, all of which were financial institutions whose deposits were insured by the FDIC: Bank-1, Bank-2, Bank-3, Bank-4, Bank-5, Bank-6, Bank-7, Bank-8, Bank-9, Bank-10.

i.   The real estate market began to decline at least by in or about 2007, the exact date being unknown to the Grand Jury. As borrowers could not pay or defaulted on their FirstCity Bank loans, FirstCity Bank acquired a growing portfolio of real estate, referred to as "real estate owned" or "REO."  In addition, the number of FirstCity Bank loans in danger of non-repayment and foreclosure steadily grew.  This put pressure on FirstCity Bank's financial condition and ability to comply with regulatory capital requirements and avoid seizure by regulators.

j.   During 2008 and into 2009, FirstCity Bank attempted

5

to address its growing REO portfolio, including by making FirstCity Bank loans to induce new borrowers to purchase the REO properties from FirstCity Bank.

k.   Efforts to prevent the failure of FirstCity Bank ultimately were unsuccessful, leading to the seizure of FirstCity Bank and appointment of the FDIC as receiver on March 20, 2009.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

3.   It was part of the defendants' conspiracy and the illegal objects thereof:

a.   While serving as Vice Chairman of FirstCity Bank's Board of Directors and in other executive officer positions, defendant MARK A. CONNER caused FirstCity Bank to make commercial real estate and other loans to fund his own personal real estate activities.   Specifically, defendant MARK A. CONNER caused FirstCity Bank to make loans to others that funded payments to defendant MARK A. CONNER or to his benefit in amounts that ranged from hundreds of thousands of dollars to millions of dollars. Defendant MARK A. CONNER used and caused to be used various methods, including short term property "flips" and transfers to straw parties, to falsely and fraudulently cause and induce FirstCity Bank to make loans to borrowers from which defendant MARK A. CONNER personally profited.   Defendant MARK A. CONNER caused this to happen by misrepresenting and causing to be misrepresented the true nature, terms, and purpose of the transactions, and by

6

hiding and concealing his personal financial interest in the transactions from FirstCity Bank and others.

b. Defendant CLAYTON A. COE was the responsible loan officer for the FirstCity Bank loans from which defendant MARK A. CONNER personally profited. Defendant CLAYTON A. COE received incentive compensation from FirstCity Bank that was tied to loans made by the bank, including those from which defendant MARK A. CONNER profited. In addition, from time to time, defendant MARK A. CONNER paid or provided additional monies to defendant CLAYTON A. COE, or made payments on his behalf or to his benefit, outside of and in addition to defendant CLAYTON A. COE'S FirstCity Bank compensation.

c. While serving as Vice President and Senior Commercial Loan Officer of FirstCity Bank, defendant CLAYTON A. COE caused and induced FirstCity Bank to make at least one commercial real estate loan in connection with a one-day flip in which defendant CLAYTON A. COE had a personal financial interest and from which he received a substantial amount of or benefit from the loan proceeds. As the responsible FirstCity Bank loan officer who recommended approval of the loan, defendant CLAYTON A. COE misrepresented and caused to be misrepresented the true nature, terms, and purpose of the transaction, and hid and concealed his personal financial interest in the transaction from FirstCity Bank and others.

d.   Although   he   began   serving   as   FirstCity   Bank's
corporate or inside counsel in January 2006, defendant ROBERT E.
MALONEY continued to perform legal work for defendant MARK A.
CONNER and corporate entities in which defendant MARK A. CONNER,
UNINDICTED  CO-CONSPIRATOR  NUMBER  1,  and  others  had  ownership
interests.   While employed as FirstCity Bank's corporate counsel,
defendant ROBERT E. MALONEY helped disguise, hide, and conceal
defendant  MARK  A.  CONNER's  personal  financial  interests  in
commercial real estate and other loans made by FirstCity Bank that
funded payments to defendant MARK A. CONNER or to his benefit in
amounts that ranged from hundreds of thousands of dollars to
millions of dollars.   Defendant ROBERT E. MALONEY also helped
disguise the true nature, terms, and purpose of the transactions.
In addition to the salary that he received from FirstCity Bank,
defendant ROBERT E. MALONEY took or received multiple additional
payments in the form of "legal fees" from defendant MARK A. CONNER
and  the  proceeds  of  these  transactions,  which  involved  both
FirstCity Bank, his employer, and defendant MARK A. CONNER.

e.   Defendants  MARK  A.  CONNER  and  CLAYTON  A.  COE
recruited borrowers to obtain loans from FirstCity Bank from which
defendants MARK A. CONNER and CLAYTON A. COE would profit.   To
recruit such borrowers, defendants MARK A. CONNER and CLAYTON A.
COE offered and caused to be offered terms that were very favorable
to the borrowers.   These terms typically included 100% financing by

FirstCity Bank (i.e., the borrower would not have to make a down payment or pay any earnest money) and, for certain loans, the establishment of an interest reserve at FirstCity Bank to relieve the borrower of any obligation to make monthly interest payments on the loan for an initial period of time.

   f. Defendants MARK A. CONNER and CLAYTON A. COE prepared, caused to be prepared, signed, and caused to be signed false and fraudulent credit memoranda recommending and approving the loans from which defendants personally profited.  In addition to concealing their personal interests in the loans, these credit memoranda falsely and fraudulently portrayed the underlying transaction and the purpose of FirstCity Bank's loans.  These credit memoranda included other material false and fraudulent representations, such as the existence and amount of a down payment or investment in the project that the borrower was and would be required to make.

   g. To cause FirstCity Bank to make the loans from which they personally profited, defendants MARK A. CONNER and CLAYTON A. COE presented the loans and corresponding credit memoranda to FirstCity Bank's loan committee without disclosing the truth about their personal involvement or other misrepresentations about the loans and underlying real estate transactions.  Defendant MARK A. CONNER then made and caused to be made presentations to FirstCity Bank's Board of Directors that summarized the loan committee

meetings and approved loans, without disclosing the truth about defendants' personal involvement or other misrepresentations about the loans and underlying real estate transactions.

h.   Defendants MARK A. CONNER and CLAYTON A. COE also caused multiple federally-insured financial institutions in Georgia and Florida to participate in, in whole or in part, certain loans from which defendants MARK A. CONNER and CLAYTON A. COE had personally profited, loans that defendants MARK A. CONNER and CLAYTON A. COE had caused FirstCity Bank to make based on false and fraudulent credit memoranda and other misrepresentations. Defendants MARK A. CONNER and CLAYTON A. COE sent and caused to be sent to these other banks false and fraudulent credit memoranda that had been prepared for FirstCity Bank, for the purpose of causing other banks to participate in the FirstCity Bank loans in which defendants had personally profited.

i.   Defendant ROBERT E. MALONEY prepared and caused to be prepared deeds and other documents that disguised and concealed defendant MARK A. CONNER's personal financial interest in transactions via short term property "flips" and transfers to straw parties.   Defendant ROBERT E. MALONEY also helped disguise defendant MARK A. CONNER's personal financial interest in transactions funded by FirstCity Bank loans by receiving funds into, and making payments to or for defendant MARK A. CONNER or to his benefit, through an attorney escrow account maintained at

10

FirstCity Bank, designated "Robert E. Maloney, Jr., Trust Account IOLTA," account number XXX-2724.

j.    After FirstCity Bank funded certain ADC loans, defendant MARK A. CONNER caused FirstCity Bank employees to make "draws" upon the loan funds and transfer or pay those funds to defendant MARK A. CONNER or to his benefit and to keep other loans at the bank current.   Defendant MARK A. CONNER also caused FirstCity Bank employees to transfer or pay funds from interest reserve accounts that had been established for the borrowers to his own personal bank accounts, accounts that he controlled, or to his benefit.

k.    As FirstCity Bank's real estate owned, or "REO," portfolio grew in 2008, defendants MARK A. CONNER and CLAYTON A. COE falsely and fraudulently represented to FirstCity Bank and its loan committee the terms upon which certain REO sales were being made.   To conceal and hide from FirstCity Bank that certain borrowers were "straw" borrowers who did not make the required down payment, defendants MARK A. CONNER and CLAYTON A. COE prepared and caused to be prepared, and signed and caused to be signed documents such as credit memoranda falsely stating that the purchaser was and would be required to make a down payment.

l.    Defendants MARK A. CONNER, CLAYTON A. COE, and ROBERT E. MALONEY made and caused to be made false and fraudulent representations to federal and state bank examiners and regulators,

participant banks, and others who made inquiries or asked questions about loans from which defendants had profited and that FirstCity Bank had made based on false and fraudulent credit memoranda and other documents that defendants prepared and caused to be prepared, and signed and caused to be signed.

OVERT ACTS

4.    In furtherance of the defendants' conspiracy, and to effect the illegal objects and purposes thereof, various overt acts were committed by the defendants and their co-conspirators within the Northern District of Georgia and elsewhere, including but not limited to the following:

January 12, 2005 Misty Lakes Loan

a.    On or about January 4, 2005, defendant CLAYTON A. COE caused FirstCity Bank's loan committee to approve a loan for approximately $806,400 to M.J.&R. Inc. to purchase 16 lots in the Misty Lakes subdivision, DeKalb County, Georgia.  Defendants MARK A. CONNER and CLAYTON A. COE prepared and caused to be prepared, and signed and caused to be signed a credit memorandum falsely and fraudulently stating that M.J.&R., Inc. would inject $89,600 into the purchase and concealing defendant CLAYTON A. COE's personal financial interest in M.J.&R, Inc.'s purchase.

b.    On or about January 12, 2005, M.J.&R., Inc. used the proceeds of FirstCity Bank's loan to purchase 16 lots in the Misty Lakes subdivision for $800,000 from TLC Real Estate Services, Inc.,

12

an entity registered in the name of defendant CLAYTON A. COE's spouse. TLC Real Estate Services, Inc. had itself acquired the lots the same day. TLC Real Estate Services, Inc. received checks totaling approximately $103,000 from the proceeds of its "flip" to M.J.&R., Inc. and related "flips" of other Misty Lakes lots that it also acquired and sold the same day in transactions financed by other financial institutions.

c.   Defendants MARK A. CONNER and CLAYTON A. COE caused Bank-2 and Bank-3 to participate in FirstCity Bank's loan to M.J.&R. Inc.

d.   On or about December 20, 2006, defendants MARK A. CONNER and CLAYTON A. COE caused M.J.&R., Inc. to transfer to defendant CLAYTON A. COE ownership of the 16 lots in the Misty Lakes subdivision, even though FirstCity Bank's loan to M.J.&R. Inc. was still outstanding at FirstCity Bank.

September 29, 2005 and February 1, 2006 Lake Jackson Loans

e.   On or about September 29, 2005, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank's loan committee to approve a $420,000 loan to UNINDICTED CO-CONSPIRATOR NUMBER 1. According to the false and fraudulent credit memorandum that defendants prepared and caused to be prepared and signed and caused to be signed, the purpose of the loan was to refinance UNINDICTED CO-CONSPIRATOR NUMBER 1's existing debt on property owned by UNINDICTED CO-CONSPIRATOR NUMBER 1 on or near Lake Jackson, Newton

13

County, Georgia, although UNINDICTED CO-CONSPIRATOR NUMBER 1 did not own the property at that time.

f.   On or about October 5, 2005, UNINDICTED CO-CONSPIRATOR NUMBER 1 used the proceeds of FirstCity Bank's loan to purchase the property for $420,000.

g.   On or about December 28, 2005, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank's loan committee to approve a $675,000 loan to G.T.B. According to the false and fraudulent credit memorandum that defendants prepared and caused to be prepared and signed and caused to be signed, the purpose of the loan was to provide G.T.B. short term financing on approximately 50 acres on or near Lake Jackson in Newton County, Georgia.

h.   On or about February 1, 2006, defendant MARK A. CONNER caused the property that UNINDICTED CO-CONSPIRATOR NUMBER 1 had purchased on or about October 5, 2005, to be transferred to S.C., Inc., an entity registered to UNINDICTED CO-CONSPIRATOR NUMBER 1, and then transferred to G.T.B. Defendant MARK A. CONNER caused the transfer to G.T.B. to be disguised and closed as a refinancing by FirstCity Bank, although G.T.B. in fact was purchasing the property from UNINDICTED CO-CONSPIRATOR NUMBER 1 and S.C., Inc.

i.   FirstCity Bank's loan to G.T.B. closed on or about February 1, 2006, and funded a check for $225,890 that was deposited into defendant ROBERT E. MALONEY's trust account number

14

XXX-2724 at FirstCity Bank.   Defendant MARK A. CONNER caused defendant ROBERT E. MALONEY to issue a check in the amount of $225,890 made payable to defendant MARK A. CONNER, that was deposited into FirstCity Bank account number XXXX-223, an account controlled by defendant MARK A. CONNER.

   j.   Defendants MARK A. CONNER and CLAYTON A. COE caused Bank-5 to participate in FirstCity Bank's loan to G.T.B.

   k.   On or about November 14, 2007, defendant CLAYTON A. COE sent an email to Bank-5 relating to FirstCity Bank's loan to G.T.B.

<u>December 21, 2006 Palmetto Loan</u>

   l.   On or about October 18, 2006, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank's loan committee to approve a loan for $1,040,000 to J.G.   According to the false and fraudulent credit memorandum that defendants prepared and caused to be prepared and signed and caused to be signed, the purpose of the loan was to refinance J.G.'s existing debt on approximately 13 acres in Palmetto, Georgia, even though the property was owned at that time by MAC Holdings of Fulton County, LLC, a company owned and controlled by defendant MARK A. CONNER.

   m.   On or about December 21, 2006, defendant MARK A. CONNER transferred and caused to be transferred his company's interest in the Palmetto property to J.G.   FirstCity Bank's loan to J.G. was disguised to make the closing seem like a refinance of

15

J.G.'s existing debt on the property, even though in truth J.G. was purchasing the property from defendant MARK A. CONNER's company. FirstCity Bank's loan proceeds funded a payment of approximately $930,265 for the benefit of defendant MARK A. CONNER, to satisfy a loan made previously to defendant MARK A. CONNER's company by another financial institution, A.B.&T.

n.    Defendants MARK A. CONNER and CLAYTON A. COE caused Bank-8 to participate in FirstCity Bank's loan to J.G.

June 7, 2007 and July 6, 2007 Durham Lakes Loan

o.    On or about May 30, 2007, defendants MARK. A. CONNER and CLAYTON A. COE caused FirstCity Bank's loan committee to approve a loan for approximately $1,856,700 to Southland Builders of Georgia, LLC to purchase 72 lots in the Durham Lakes subdivision in Fairburn, Georgia from FirstCity Bank. Southland Builders of Georgia, LLC was an entity registered to UNINDICTED COCONSPIRATOR NUMBER 1.    Southland Builders of Georgia, LLC purchased the property from FirstCity Bank on or about June 7, 2007 for $2,062,443 with the proceeds of FirstCity Bank's loan and a down payment of approximately $221,740 paid from a check drawn on defendant ROBERT E. MALONEY's trust account number xxx-2724.

p.    On or about July 6, 2007, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank to increase its loan to Southland Builders of Georgia, LLC by $500,000, which funded a deposit of approximately $483,096 to defendant ROBERT E. MALONEY's

16

trust account number XXX-2724. That deposit in turn funded payments or transfers from defendant ROBERT E. MALONEY's trust account number XXX-2724 made to or for defendant MARK A. CONNER's benefit, including a $400,000 payment made on or about July 6, 2007, to fund defendant MARK A. CONNER's purchase of stock in another financial institution, Bank-7.

     q. On or about July 11, 2007, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank's loan committee to approve the $500,000 loan increase. Defendants MARK A. CONNER and CLAYTON A. COE prepared and caused to be prepared and signed and caused to be signed a false and fraudulent credit memorandum dated on or about July 5, 2007, stating that the purpose of the $500,000 loan increase was to provide working capital to complete subdivision improvements on 72 lots in the Durham Lakes subdivision.

<u>July 30, 2007 Durham Lakes Loans</u>

     r. On or about July 11, 2007, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank's loan committee to approve two ADC loans to R.J. totaling $6,458,000 to purchase lots in the Durham Lakes subdivision in Fairburn, Georgia, from Southland Builders of Georgia, LLC and construct 10 homes. Defendants MARK A. CONNER and CLAYTON A. COE prepared and caused to be prepared and signed and caused to be signed false and fraudulent credit memoranda dated on or about July 6, 2007, stating that R.J.

would inject a total of $1,072,000 into the purchase.

      s.   On or about July 25, 2007, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank's loan committee to approve replacing these loans with three ADC loans to R.J. totaling $5,690,000 to purchase lots in the Durham Lakes subdivision from Southland Builders of Georgia, LLC and construct 10 homes. Defendants MARK A. CONNER and CLAYTON A. COE prepared and caused to be prepared and signed and caused to be signed false and fraudulent credit memoranda dated on or about July 25, 2007, stating that R.J. would inject a total of $880,000 into the purchase.

      t.   On or about July 30, 2007, FirstCity Bank disbursed approximately $4,267,706 in loan proceeds to fund R.J.'s purchase of the property from Southland Builders of Georgia, LLC. R.J. did not inject any money into the purchase.

      u.   The proceeds of FirstCity Bank's loan funded checks totaling approximately $862,147 that were deposited into defendant ROBERT E. MALONEY's trust account number XXX-2724 at FirstCity Bank. These deposits funded payments or transfers from defendant ROBERT E. MALONEY's trust account number xxx-2724 made to or for defendant MARK A. CONNER's benefit, including a wire transfer of approximately $877,939 to Bank-4, as payment on a line of credit held in defendant MARK A. CONNER's name at that bank.

      v.   Defendants MARK A. CONNER and CLAYTON A. COE caused the following banks to participate in FirstCity Bank's loans to

R.J.: Bank-1, Bank-2, Bank-6, Bank-7, Bank-8, Bank-9, and Bank-10.

## August 17, 2007 Lake Spivey Loan

w.   On or about August 8, 2007, defendants MARK A.
CONNER and  CLAYTON A. COE caused FirstCity Bank's loan committee
to approve a loan for $2,400,000 to H.P.G., LLC to purchase 3 lots
on or near Lake Spivey, Georgia.  Defendants MARK A. CONNER and
CLAYTON A. COE prepared and caused to be prepared and signed and
caused to be signed false and fraudulent credit memoranda dated on
or about August 6, 2007, stating that H.P.G. was purchasing the
property for $3,025,000, which would require a $625,000 down
payment from H.P.G.

x.   On or about August 17, 2007, H.P.G. used the
proceeds of FirstCity Bank's loan to purchase the Lake Spivey
property from Southland Builders of Georgia, LLC.  Defendant MARK
A. CONNER caused the settlement statement from this closing to
reflect falsely that H.P.G. paid approximately $631,834 at closing
to purchase the property, when in truth H.P.G. did not make such a
payment.   To make it appear as if H.P.G. made a down payment,
defendant ROBERT E. MALONEY issued and caused to be issued a check
from his trust account number XXX-2724 in the amount of $631,834,
when in reality that was funded by part of the proceeds of
FirstCity Bank's loans.

August 17, 2007 Villages of Avalon Loans (J.B.H., Inc.)

y.   On or about August 8, 2007, defendants MARK A. CONNER and  CLAYTON A. COE caused FirstCity Bank's loan committee to approve two loans to J.B.H., Inc., totaling $3,650,000 to purchase lots and construct homes in the Villages of Avalon subdivision in Henry County, Georgia.  For one of these loans, defendants MARK A. CONNER and CLAYTON A. COE prepared and caused to be prepared and signed and caused to be signed a false and fraudulent credit memorandum dated on or about August 6, 2007, stating that J.B.H., Inc.'s cost for 35 of the lots being purchased was $1,925,000, which would require $525,000 from J.B.H., Inc. because FirstCity Bank was only loaning J.B.H., Inc. $1,400,000 for the purchase of such lots.

z.   On or about August 17, 2007, defendant MARK A. CONNER transferred and caused to be transferred to Southland Builders of Georgia, LLC certain lots in the Villages of Avalon subdivision in Henry County that defendant MARK A. CONNER had himself acquired on or about May 9, 2007.

aa.  On or about August 17, 2007, J.B.H., Inc. used the proceeds of FirstCity Bank's loans to purchase 55 lots in the Villages of Avalon subdivision that defendant MARK A. CONNER had transferred and caused to be transferred to Southland Builders of Georgia, LLC.   Defendant MARK A. CONNER caused the settlement statements from this closing to reflect falsely that J.B.H., Inc.

20

had paid $825,000 as earnest money, when in truth J.B.H., Inc. had not paid any earnest money.

bb.   When FirstCity Bank's loans to J.B.H., Inc. closed on or about August 17, 2007, the proceeds funded checks totaling approximately $1,827,795 that were deposited into defendant ROBERT E. MALONEY's trust account number XXX-2724 at FirstCity Bank.

cc.   Defendants MARK A. CONNER and CLAYTON A. COE caused Bank-3, Bank-4, Bank-7, and Bank-9 to participate in FirstCity Bank's loans to J.B.H., Inc.

August 28, 2007 Villages of Avalon Loans (A.B.G., LLC)

dd.   On or about August 22, 2007, the exact date being unknown to the Grand Jury, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank's loan committee to approve two loans to A.B.G., LLC, totaling $3,650,000 to purchase lots and construct homes in the Villages of Avalon subdivision in Henry County.

ee.   On or about August 28, 2007, defendant MARK A. CONNER transferred and caused to be transferred to Southland Builders of Georgia, LLC certain lots in the Villages of Avalon subdivision in Henry County that defendant MARK A. CONNER had himself acquired on or about May 9, 2007.

ff.   On or about August 28, 2007, A.B.G., LLC used the proceeds of FirstCity Bank's loans to acquire 50 lots in the Villages of Avalon subdivision that defendant MARK A. CONNER had transferred and caused to be transferred to Southland Builders of

21

Georgia, LLC on August 28, 2007. Defendant MARK A. CONNER caused the settlement statements from this closing to reflect falsely that A.B.G., LLC had paid $550,000 as earnest money, when in truth A.B.G., LLC had not paid any earnest money.

gg.   When FirstCity Bank's loans to A.B.G., LLC closed on or about August 28, 2007, the proceeds funded checks totaling approximately $2,187,386 that were deposited into defendant ROBERT E. MALONEY's trust account number XXX-2724.

<u>August 2007 Transactions in</u>

<u>Defendant MALONEY's Trust Account Number XXX-2724</u>

hh.   From the over $4,000,000 in proceeds from FirstCity Bank's loans to J.B.H., Inc. and A.B.G. that were deposited to defendant ROBERT E. MALONEY's trust account number XXX-2724, defendant MARK A. CONNER caused the following payments and transfers to himself or to his benefit: $2,220,000 in payments on lines of credit held in defendant MARK A. CONNER's name at Bank-4; $700,000 payable to an entity owned and controlled by defendant MARK A. CONNER; and $913,067 payable to defendant MARK A. CONNER and deposited into his personal bank account at FirstCity Bank, account number XXXX-318-2.

<u>2008 and 2009</u>

ii.   On or about June 26, 2008, defendants MARK A. CONNER and CLAYTON A. COE caused FirstCity Bank to sell REO property, specifically, approximately 40 acres off Lombard Road in DeKalb

22

County, Georgia, to DH Lot Investor Fund Number Two for $1,600,000, which was funded by a loan from FirstCity Bank.

jj.  On or about November 13, 2008, defendant MARK A. CONNER submitted and caused to be submitted to the FDIC and Federal Reserve Board on behalf of FirstCity Bank an application seeking $2 million from the United States Treasury Department's Troubled Asset Relief Program ("TARP").  On or about February 3, 2009, defendant MARK A. CONNER submitted and caused to be submitted an amended application to request $6.1 million.

kk.  On or about January 13, 2009, defendant MARK A. CONNER caused to be transferred approximately $105,862 out of an interest reserve account numbered XXX5818 established for B.R., a borrower of FirstCity Bank.

ll.  On or about March 12, 2009, defendant MARK A. CONNER caused FirstCity Bank to sell REO property, specifically, Lots 79-82 in the Crystal Lake subdivision, Henry County, Georgia, to Loganville Holdings, LLC, for $1,040,000, which was funded by a loan of $936,000 from FirstCity Bank.

mm.  On or about March 20 and March 21, 2009, defendants MARK A. CONNER, CLAYTON A. COE, and ROBERT E. MALONEY met with FDIC employees in connection with the transition of bank operations to the FDIC as receiver for FirstCity Bank.

nn.  Counts Three through Twenty of this Indictment are incorporated herein by reference as additional overt acts of this

conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
### (Continuing Financial Crimes Enterprise)
### 18 U.S.C. § 225

5.   The Grand Jury hereby realleges and incorporates by reference the factual allegations of paragraphs 2 through 4 and 7 through 8 of this Indictment as if the same were fully set forth herein.

6.   Beginning in 2004, and continuing thereafter up to in or about March 21, 2009, in the Northern District of Georgia and elsewhere, defendant MARK A. CONNER knowingly conducted a continuing financial crimes enterprise, in that the defendant MARK A. CONNER knowingly and intentionally violated Title 18, United States Code, Section 1344 as alleged in Counts Four through Twenty of this Indictment, which Counts are incorporated herein by reference, which violations were undertaken by defendant MARK A. CONNER, in concert with at least three other persons whom the defendant organized, managed, and  supervised, and from which continuing series of violations defendant MARK A. CONNER received $5,000,000 or more in gross receipts from in or about February, 2006 and ending in or about February, 2008.

All in violation of Title 18, United States Code, Section 225.

24

**COUNTS THREE THROUGH TWELVE**
**(Bank Fraud)**
**18 U.S.C. § 1344**

7.    The Grand Jury hereby realleges and incorporates by reference the factual allegations of paragraphs 2 through 4 of this Indictment as if the same were fully set forth herein.

8.    On or about the dates identified in Column C of the Chart set forth below, each date constituting a separate Count as set forth in Column A, in the Northern District of Georgia and elsewhere, the defendants identified in Column B, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly devise and execute and attempt to execute a scheme and artifice (i) to defraud a financial institution and (ii) to obtain moneys, funds, and assets owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises about the purposes and the material terms of the loans made by FirstCity Bank described below in Columns C, D, and E, including whether the transaction involved a purchase or a refinance of existing debt, whether or to what extent the borrower would be required to make a down payment or otherwise invest in the land or project, and to conceal the defendants' personal financial interests, with the proceeds thereof utilized by the defendants and their co-schemers:

| A Count | B Defendants | C Transaction | D Financial Institution (s) | E Loan Amount |
|---|---|---|---|---|
| 3 | MARK A. CONNER; CLAYTON A. COE | 1/12/2005 M.J.R., Inc./ 16 lots Misty Lakes | FirstCity Bank, Bank-2, Bank-3 | $800,000 |
| 4 | MARK A. CONNER; CLAYTON A. COE | 10/5/2005 UNINDICTED COCONSPIRATOR NUMBER 1/50 acres Lake Jackson | FirstCity Bank | $420,000 |
| 5 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 2/1/2006 G.T.B./ 50 acres Lake Jackson | FirstCity Bank, Bank-5 | $675,000 |
| 6 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 12/21/2006 J.G./ 13 acres Palmetto | FirstCity Bank, Bank-8 | $1,040,000 |
| 7 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 5/30/2007 Southland Builders of Georgia, LLC/ 72 lots Durham Lakes | FirstCity Bank | $1,856,700 |

| A<br>Count | B<br>Defendants | C<br>Transaction | D<br>Financial<br>Institution<br>(s) | E<br>Loan<br>Amount |
|---|---|---|---|---|
| 8 | MARK A.<br>CONNER;<br>CLAYTON A.<br>COE; ROBERT<br>E. MALONEY | 7/6/2007<br>Southland<br>Builders of<br>Georgia, LLC/<br>72 lots Durham<br>Lakes | FirstCity<br>Bank | $500,000<br>increase |
| 9 | MARK A.<br>CONNER;<br>CLAYTON A.<br>COE; ROBERT<br>E. MALONEY | 7/30/2007<br>R.J./<br>72 lots Durham<br>Lakes | FirstCity<br>Bank,<br>Bank-1,<br>Bank-2,<br>Bank-6,<br>Bank-7,<br>Bank-8,<br>Bank-9,<br>Bank-10 | $5,690,000 |
| 10 | MARK A.<br>CONNER;<br>CLAYTON A.<br>COE; ROBERT<br>E. MALONEY | 8/17/2007<br>H.P.G./<br>3 lots Lake<br>Spivey | FirstCity<br>Bank | $2,400,000 |
| 11 | MARK A.<br>CONNER;<br>CLAYTON A.<br>COE; ROBERT<br>E. MALONEY | 8/17/2007<br>J.B.H., Inc./<br>55 lots Villages<br>of Avalon | FirstCity<br>Bank, Bank-<br>3, Bank-4,<br>Bank-7,<br>Bank-9 | $3,650,000 |
| 12 | MARK A.<br>CONNER;<br>CLAYTON A.<br>COE; ROBERT<br>E. MALONEY | 8/28/2007<br>A.B.G., LLC<br>50 lots Villages<br>of Avalon | FirstCity<br>Bank | $3,450,000 |

All in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNTS THIRTEEN THROUGH TWENTY
### (False Entries)
### 18 U.S.C. § 1005

9.   The Grand Jury hereby realleges and incorporates by reference the factual allegations of paragraphs 2 through 4 of this Indictment as if the same were fully set forth herein.

10.   On or about the dates identified in Column C of the Chart set forth below, each date constituting a separate Count as set forth in Column A, in the Northern District of Georgia and elsewhere, the defendants identified in Column B, aided and abetted by each other and others known and unknown to the Grand Jury, with the intent to injure and defraud FirstCity Bank of Stockbridge, Georgia, a financial institution, and to deceive the Federal Deposit Insurance Corporation and any agent and examiner appointed to examine the affairs of such financial institution, knowingly made and caused to be made the false entry identified in Column D in the books, reports, and statements of FirstCity Bank:

| A<br>Count | B<br>Defendants | C<br>Transaction | D<br>False Entry |
|---|---|---|---|
| 13 | MARK A. CONNER; CLAYTON A. COE | 1/12/2005 M.J.R., Inc./ 16 lots Misty Lakes | Credit memorandum representing that M.J.R., Inc. "is injecting $89,600 into the purchase." |

| A Count | B Defendants | C Transaction | D False Entry |
|---|---|---|---|
| 14 | MARK A. CONNER; CLAYTON A. COE | 10/5/2005 UNINDICTED COCONSPIRATOR NUMBER 1/50 acres Lake Jackson | Credit memorandum representing that the purpose of FirstCity Bank's loan "is to refinance" approximately 50 acres on Lake Jackson, Georgia. |
| 15 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 12/21/2006 J.G./ 13 acres Palmetto | Credit memorandum representing that the purpose of FirstCity Bank's loan is "to refinance the existing debt" on approximately 13 acres in Palmetto, Georgia. |
| 16 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 7/6/2007 Southland Builders of Georgia, LLC/ 72 lots Durham Lakes | Credit memorandum representing that the purpose of a $500,000 loan increase is to "provide working capital to complete subdivision improvements" on 72 lots in the Durham Lakes subdivision. |
| 17 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 7/30/2007 R.J./ 72 lots Durham Lakes | Credit memoranda representing that borrower R.J. will "inject" a total of $880,000 into the purchase of 72 lots in the Durham Lakes subdivision. |

| A Count | B Defendants | C Transaction | D False Entry |
|---|---|---|---|
| 18 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 8/17/2007 H.P.G./ 3 lots Lake Spivey | Credit memorandum representing that borrower H.P.G. will make a down payment of $625,000 to purchase 3 lots on or near Lake Spivey, Georgia. |
| 19 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 8/17/2007 J.B.H., Inc./ 55 lots Villages of Avalon | HUD-1 settlement statements representing that borrower J.B.H., Inc. paid earnest money totaling $825,000 to purchase 55 lots in the Villages of Avalon Subdivision. |
| 20 | MARK A. CONNER; CLAYTON A. COE; ROBERT E. MALONEY | 8/28/2007 A.B.G., LLC 50 lots Villages of Avalon | HUD-1 settlement statements representing that borrower A.B.G., LLC, paid earnest money totaling $550,000 to purchase 50 lots in the Villages of Avalon Subdivision. |

All in violation of Title 18, United States Code, Sections 1005 and 2.

## COUNT TWENTY-ONE
### (False Statements to a Financial Institution)
### 18 U.S.C. § 1014

11.   The Grand Jury hereby realleges and incorporates by reference the factual allegations of paragraphs 2 through 4 of this

Indictment as if the same were fully set forth herein.

12.   On or about December 18, 2008, in the Northern District of Georgia and elsewhere, defendant CLAYTON A. COE, aided and abetted by others known and unknown to the Grand Jury, did knowingly make and cause to be made a material false statement to Bank-10, an institution the deposits of which were then insured by the Federal Deposit Insurance Corporation, namely the false representation that B.M. paid $23,500 as earnest money and down payment to purchase a house from defendant CLAYTON A. COE, for the purpose of influencing the actions of Bank-10, namely to extend a loan of approximately $211,718 to B.M. to finance the purchase, when in truth and in fact, as the defendant well knew, B.M. did not pay any earnest money and down payment.

All in violation of Title 18, United States Code, Sections 1014 and 2.

### COUNT TWENTY-TWO
### (Money Laundering Conspiracy)
### 18 U.S.C. § 1956(h)

13.   The Grand Jury hereby realleges and incorporates by reference the factual allegations of paragraphs 2 through 4 of this Indictment as if the same were fully set forth herein.

14.   Beginning in or about January 2006, the exact date being unknown to the Grand Jury, and continuing thereafter until on or about March 21, 2009, in the Northern District of Georgia and elsewhere, defendants MARK A. CONNER, CLAYTON A. COE, and ROBERT E.

MALONEY knowingly combined, conspired, confederated, agreed, and had a tacit understanding with each other and others known and unknown to the Grand Jury to commit money laundering by engaging and attempting to engage in monetary transactions in criminally derived property that had a value of greater than $10,000, that is, the deposit, withdrawal, transfer, and exchange, in or affecting interstate or foreign commerce, of monetary instruments, including U.S. currency, personal checks, bank checks, and money orders, by, through, or to a financial institution, such property having been derived from specified unlawful activities, specifically, the conspiracy to commit bank fraud described in paragraphs 2 through 4 above, the bank fraud offenses charged in Counts Three through Twelve, and the false entry offenses charged in Counts Thirteen through Twenty, in violation of Title 18, United States Code, Section 1956(h).   On or about the dates listed below, the defendants knowingly engaged in the monetary transactions in criminally derived property as follows:

| DATE | Monetary Transaction |
|------|----------------------|
| 2/1/2006 | Defendant MALONEY issued and caused to be issued check 2136 from account number XXX-2724 in the amount of $225,890.24 payable to defendant CONNER, which was deposited into a Henry Holdings of Tallahassee, Fla., FirstCity Bank account XXXX-0223. |

| DATE | Monetary Transaction |
|------|----------------------|
| 7/6/2007 | Defendant MALONEY issued and caused to be issued check 2401 from account number XXX-2724 in the amount of $400,000 payable to Bank-7, which was deposited into an escrow account at FirstCity Bank to purchase stock for Defendant CONNER in Bank-7. |
| 8/2/2007 | Defendant Maloney transferred and caused to be transferred $877,939.02 from account number XXX-2724 to Bank-4 to pay down Defendant CONNER's line of credit XXXX-5300 at Bank-4. |
| 8/23/07 | Defendant MALONEY issued and caused to be issued check 2441 from account number XXX-2724 in the amount of $700,000 payable to Henry Holdings of Tallahassee, which was deposited into account XXXX-0223 at FirstCity Bank. |
| 8/23/07 | Defendant MALONEY transferred and caused to be transferred $720,000 from account number XXX-2724 to Bank-4 to pay down Defendant CONNER's line of credit XXXX-5300 at Bank-4. |
| 8/29/07 | Defendant MALONEY transferred and caused to be transferred $1,500,000 from account number XXX-2724 to Bank-4 to pay down Defendant CONNER's line of credit XXXX-3500 at Bank-4. |
| 8/31/07 | Defendant MALONEY issued and caused to be issued check 2450 from account number XXX-2724 in the amount of $913,067.13 payable to Defendant CONNER that was deposited into account XXXX-3182. |

| DATE | Monetary Transaction |
|------|---------------------|
| 9/4/07 | Defendant CONNER transferred and caused to be transferred $340,000 FROM ACCOUNT XXXX-3182 to Defendant MALONEY's account XXXX-2724. |
| 9/5/07 | Defendant MALONEY issued and caused to be issued check 2451 from account number XXX-2724 in the amount of $338,670 payable to A.B.G. LLC, which was deposited in FirstCity Bank account XXX-5347. |

All in violation of Title 18, United States Code, Section 1956(h).

FORFEITURE PROVISION

15.  Upon conviction of one or more of the offenses alleged in Counts One and Three through Twenty-One of this Indictment, defendants MARK A. CONNER, CLAYTON A. COE, and ROBERT E. MALONEY, JR., shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following:

(a)  A sum of money in United States currency equal to the amount of proceeds obtained as a result of the offense.

16.  Additionally, upon conviction of the offense alleged in Count Twenty-Two of this Indictment, the defendants MARK A. CONNER, CLAYTON A. COE, and ROBERT E. MALONEY, JR., shall forfeit to the United States any and all property, real or personal, involved in

34

the money laundering offense and all property traceable to such property pursuant to 18 U.S.C. § 982(a)(1) and 1956(h), including but not limited to the following:

(a)   A sum of money in United States currency equal to the amount of involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted.   If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the a mount involved in such offense;

(b)   Any and all funds maintained at Cayman National Bank Ltd., account number XX-XXX-X9417, in the name of IronRock Holdings, Ltd.; and

(c)   Any and all funds maintained at Cayman National Bank Ltd., account number XX-XXX-X0631, in the name of Hamilton Funding.

17.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

35

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

A _____ True _____ BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

DOUGLAS W. GILFILLAN
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 294713

DAVID M. CHAIKEN
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 118618

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404/581-6186